FILED 5 MAR '14 13:00USDC-ORP

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### District of Oregon

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.     '14-MJ-033 |
| Lamar Sheron Rogers, | ) | |
| aka Sheron Lamar Rogers | ) | |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ March 4, 2014 _____ in the county of _____ Multnomah _____ in the
_____ District of _____ Oregon _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 49 USC § 46504 | Interference with flight crew members |

This criminal complaint is based on these facts:

See Affidavit of FBI SA Jake Green which is attached hereto and incorporated herein by this reference

☑ Continued on the attached sheet.

_____
Complainant's signature

SA Jake Green
_____
*Printed name and title*

Sworn to before me and signed in my presence.

Date:     03/05/2014

_____
Judge's signature

City and state:          Portland, Oregon

John V. Acosta, U.S. Magistrate Judge
_____
*Printed name and title*

STATE OF OREGON               )
                              ) ss.        **AFFIDAVIT OF JAKE GREEN**
COUNTY OF MULTNOMAH           )

### AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT

I, Jake Green, having been first duly sworn, do hereby depose and state as follows:

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since July 2011.  I am currently assigned to the Portland division of the FBI where I investigate violations of federal law.  My primary duties have included the investigation of cases involving Domestic Terrorism.   For the past fourteen months I have been assigned as the FBI's liaison with the Portland International Airport (PDX).  I received five (5) months of training at the FBI Academy in Quantico, Virginia, including interviewing and interrogation techniques, arrest procedures, search warrant applications, criminal case management, informant development, and various other criminal law procedures.  I have also attended the FBI Domestic Terrorism In-Service Training and the Counterterrorism Investigations and Operations course.

2.      This affidavit is submitted in support of an arrest warrant for Lamar Sheron ROGERS (ROGERS), a black male, adult, date of birth XXXX, 1987, for Interference with Flight Crew Members.

3.      Title 49, United States Code, Section 46504 provides as follows:

> An individual on an aircraft in the special jurisdiction of the United States who, by assaulting or intimidating a flight crew member or flight attendant of the aircraft, interferes with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties, or attempts or conspires to do such an act, shall be fined under title 18, imprisoned for not more than 20 years, or both. However, if a dangerous weapon is used in assaulting or intimidating the member or attendant, the individual shall be imprisoned for any term of years, or for life.

PAGE 1 -     AFFIDAVIT OF JAKE GREEN

4.    The statements contained in this affidavit are based upon the following: my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; interviews of witnesses; my review of records related to this investigation; and, information gained through my training and experience. This affidavit does not contain all facts known to me regarding this investigation, but instead contains only those facts which I believe are sufficient to establish probable cause. Through my involvement in this investigation, I became aware of the following information:

5.    On March, 4, 2014, at 7:47 AM, I was notified by a Port of Portland (POP) Police Officer that Southwest Airlines Flight 1010, tail number N360SW, flying from Seattle to Sacramento, had a passenger causing a disturbance on the airplane. As a result of the disturbance, the aircraft diverted to PDX to allow law enforcement to deal with the passenger causing the disturbance because the crew believed the passenger posed a threat to the safety of the aircraft. ROGERS was a aboard Flight 1010. According to the flight crew, when ROGERS first got on the plane he was confrontational. He said he had reserved a first class ticket, and loudly demanded to be seated in the front of the plane. ROGERS was told Southwest doesn't have a first class, and he could take any of the open seats in the middle of the plane. Flight Attendant 2 (FA2) had to tell ROGERS three times to stow his bags. In response to being told to place his bag in the overhead compartment, ROGERS stated, "I do what I want." After the flight doors were closed, but before the flight had left the ground in Seattle, ROGERS pushed the call button. ROGERS was asked by the flight attendants if this was an emergency, ROGERS stated, "Yea . . . I need a fucking drink!" The flight attendants told ROGERS they would be serving drinks later. Passenger 2 (P2), near ROGERS, described him at this time as agitated and vulgar. P2, sitting in front of ROGERS, requested to be moved away from ROGERS because she and her daughter felt extremely scared

PAGE 2 -    AFFIDAVIT OF JAKE GREEN

and intimidated. The passenger stated ROGERS seemed so irrational and agitated that it frightened her. As the plane was taxiing, ROGERS hit the button to request a flight attendant again. ROGERS loudly demanded alcoholic drinks using foul language. When the flight attendants refused, he became belligerent. This continued while the plane was taking off and gaining altitude. Passengers on the plane appeared to be very alarmed by his behavior.

6.      After the aircraft took off, ROGERS continued pressing the call button and began shouting to the crew that is was an "emergency." Flight Attendant 1 (FA1) responded. ROGERS told FA1 he wanted three glasses of wine. FA1 told him he could only have one at a time. ROGERS asked for her first and last name. When FA1 would only provide her first name, ROGERS became upset again. ROGERS told FA1 twice to "get the fuck out of my face," and "Jesus loves you." ROGERS then demanded to speak with the pilot. The FA1 told him this was not possible. ROGERS continued pressing the call button and then began demanding loudly for the pilot to come and speak with him. ROGERS began shouting "fuck off" to passengers around him who were watching the disturbance. P1, an off-duty flight attendant sitting behind ROGERS, believed ROGERS was very close to becoming physically violent, and he contemplated retrieving "zip ties" from his bag in case they were forced to restrain ROGERS.

7.      Another passenger on the plane (P3), who had observed ROGERS being loud and belligerent with the flight crew, was approached by a flight attendant and asked if he would assist if ROGERS became violent. P3 agreed to help and the flight attendant seated him just behind and to the right of ROGERS. P3 said he believed that ROGERS was on the verge of becoming physically violent.

8.      A flight attendant spoke with the pilot in command of the flight about ROGERS' behavior. Based upon his flight attendants' statements, the pilot decided to immediately divert the

PAGE 3 -      AFFIDAVIT OF JAKE GREEN

aircraft to PDX for the safety of the crew and passengers. The plane was 65 miles southeast of Portland at the time they turned around and diverted to PDX. There were 49 souls aboard the aircraft: 44 passengers including one baby, three flight attendants and two pilots. The pilot stated the flight would ultimately be about two hours late getting to Sacramento.

9.    FA1 considered retrieving and utilizing restraints on ROGERS. FA1 stated ROGERS effectively took up all of her time thereby limiting her ability to perform her duties on the aircraft. FA2 stated ROGERS appeared extremely agitated and was acting aggressively. FA2 stated that this was the first time she had felt intimidated by a passenger in her 14 years as a flight attendant. FA2 stated all the flight attendants on the aircraft were focused on ROGERS, and that he took up all of their time. Flight Attendant 3 (FA3) stated she definitely felt intimidated by ROGERS. FA3 went so far as to prepare a pot of boiling water to use against ROGERS if he were to approach the flight deck. All three Flight Attendants saw ROGERS show gang signs with his hands elevated above his head.

10.    At 7:49 AM, the flight arrived at a gate at PDX. Two Port of Portland (POP) police officers met the plane and flight attendants directed them to ROGERS. The officers escorted ROGERS off the plane. As the three were walking off the aircraft, ROGERS kept making reference to Jesus saying, "Jesus loves you" and "praise Jesus." At 8:04 AM, the police officers took ROGERS into custody and placed him in handcuffs. At 8:10 AM, one of the police officers read ROGERS his *Miranda* Rights. When asked if he understood his rights ROGERS stated, "Si" but then stated "yes." ROGERS told the police officers that the flight attendants were racist. At times ROGERS seemed agitated and irrational. ROGERS was transported back to the POP Police Department.

PAGE 4 -    AFFIDAVIT OF JAKE GREEN

11.    At 9:32 AM, FBI agents again advised ROGERS of his *Miranda* rights and interviewed him. ROGERS indicated he began having problems on the plane when he wanted to be seated in first class, and was instead directed to the middle of the plane. ROGERS claimed he was polite in his interactions with the attendant, however, he felt "things were bad" and that the "people on the plane were evil." ROGERS felt he was being discriminated against because of his race.

12.    ROGERS stated he became involved in a verbal altercation when he was denied alcohol two more times after take-off. ROGERS stated he called the flight attendant a "fucking bitch." ROGERS requested to speak with the co-pilot, captain of the plane, or whoever else was seated in jump-seats. After engaging in the confrontation with the attendant, ROGERS stated he had a verbal altercation with another passenger, after the man asked him, "What's your problem?" ROGERS did not elaborate on his answer. ROGERS stated he had been associated with gangs previously, and any gang signs he "threw up were for Jesus."

13.    ROGERS stated he raised his voice and used his hands "animating his words." ROGERS stated he did not believe he was threatening anyone, however, he could see the flight attendants were scared when they came to talk to him. ROGERS stated another passenger was frightened of him. He knew this because she and her family moved to different seats further from him. ROGERS thought this was because he is black.

14.    ROGERS stated he had smoked "purple hash" prior to the flight. ROGERS explained Purple Hash is a type of marijuana. ROGERS did not feel high at the time of the flight or during the interview.

15.    Based on the foregoing, I am of the opinion that there is probable cause to believe that on March 4, 2014, Lamar Sheron ROGERS, who was traveling as a passenger on Southwest

PAGE 5 -    AFFIDAVIT OF JAKE GREEN

Airlines Flight 1010, an aircraft in the special aircraft jurisdiction of the United States, intimidated the flight crew, and thereby interfered with the performance of the flight crew's duties in violation of Title 49, United States Code, Section 46504.

16.     The facts of this case have been briefed to Assistant United States Attorney (AUSA) Ethan Knight.  AUSA Knight concurred with SA Green's assessment and advised he believes probable cause exists that Lamar Sheron ROGERS did interfere with the flight crew of Southwest Airlines Flight 1010.   AUSA Knight advised that prosecution of this matter will be sought in the District of Oregon.

JAKE GREEN
Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence this 5th day of March 2014.

THE HONORABLE JOHN V. ACOSTA
UNITED STATES MAGISTRATE JUDGE

PAGE 6 -     AFFIDAVIT OF JAKE GREEN